IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SHIRLEY CAVALIER * | |
| * | |
| PLAINTIFF * | |
| VS. * | CIVIL ACTION NO. _____ |
| * | |
| * | COMPLAINT AND |
| CARRINGTON MORTGAGE SERVICES, LLC©, | DEMAND FOR A JURY TRIAL |
| BANK OF AMERICA, N.A.,  EQUIFAX * | |
| INFORMATION SERVICES,  L.L.C., * | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | |
| AND TRANS UNION, LLC * | |
| DEFENDANTS * | |

## COMPLAINT

### I. INTRODUCTION

1. Plaintiff brings this action to secure redress from unlawful mortgage servicing practices by defendants Carrington Mortgage Services, LLC ("Carrington") and Bank of America, N.A. ("Bank of America") and unfair credit reporting practices engaged in by all defendants. In Count I plaintiff alleges violation of the Cranston-Gonzales amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et seq.* ("RESPA") by Bayview.  In Count II plaintiff alleges violations of the federal  Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*.

### II. JURISDICTION

2. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337, 15 U.S.C. §1681p, and 12 U.S.C. §2605.

### III. PARTIES

3. Plaintiff, Shirley Cavalier ("Ms. Cavalier" or "plaintiff"), is a natural person who resides in Ascension Parish and is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a©.

4. Defendant, Carrington Mortgage Services, LLC is a foreign limited liability

corporation authorized to do and doing business in the state of Louisiana, whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

5. Defendant, Bank of America, N.A. is a national bank authorized to do and doing business in the state of Louisiana, whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

6. Defendant Equifax Information Services, L.L.C. ("Equifax") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f). Equifax is a foreign limited liability company doing business in the state of Louisiana, who can be served through its registered agent for service of process, Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, LA 70802.

7. Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is a foreign corporation doing business in the state of Louisiana, who can be served through its registered agent for service of process, CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816.

8. Defendant, Trans Union, LLC (hereinafter referred to as "Trans Union"), is a consumer reporting agency under the FCRA. Trans Union is a foreign limited liability company doing business in the state of Louisiana, who can be served through its registered agent for service of process, The Prentice-Hall Corporation Systems, Inc., 501 Louisiana Avenue, Baton Rouge, LA 70802.

9. Defendant Bayview is the entity to whom Ms. Cavalier makes his monthly mortgage payments discussed below and which sends out periodic statements to Ms. Cavalier for her home mortgage loan, the servicing and credit reporting of which is the subject matter of this suit.

10. Defendant Bank of America is the entity to whom Ms. Cavalier previously

made her monthly mortgage payments discussed below and which sent out periodic statements to Ms. Cavalier for her home mortgage loan, the servicing and credit reporting of which is the subject matter of this suit.

11.    Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

12.    Defendant Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

13.    Defendant Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

IV. FACTUAL ALLEGATIONS

14.    Ms. Cavalier had a mortgage on her home which was serviced or owned by Bank of America, N.A. until the end of 2015 or early 2016.

15.    Ms. Cavalier is a senior citizen and had planned to spend her retirement years in her home.

16.    Ms. Cavalier learned of the possibility of lower mortgage payments through the federal Home Affordable Modification Program ("HAMP") and contacted Bank of America to

learn about her options.

17. In July 2012 Ms. Cavalier was offered a HAMP Trial Modification Agreement from Bank of America which lowered her payments for four months beginning in June 2012 from approximately $495.21 to $392.00.

18. Ms. Cavalier accepted this trial agreement however, she continued to make the full amount of her regular mortgage payments instead of the lowered amount.

19. Rather than recognizing that Ms. Cavalier made her regular mortgage payments, Bank of America began reporting her late on her mortgage to the consumer reporting agency defendants, Equifax, Experian and Trans Union.

20. Bank of America's internal accounting of this mortgage reflected that Ms. Cavalier was late as well, and instead of recognizing her mortgage was still current after the fourth payment was made under the trial agreement, it treated these payments as though no monthly payments were made from June through September 2012.

21. Thereafter the servicing of this mortgage was transferred to defendant Carrington in December 2015, however, Ms. Cavalier was unaware of this until approximately April 2016. .

22. Carrington continued the wrongful reporting begun by Bank of America and then began refusing Ms. Cavalier's mortgage payments in 2016 because of these same accounting errors.

23. Concerned that Carrington was refusing her payments despite her being current, Ms. Cavalier sent a letter to Carrington on May 11, 2016 at the address Carrington specified for RESPA letters.

24. This letter to Carrington is a "qualified written request'' and "notice of error" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

25. Carrington received this letter and responded to it.

26. In violation of its obligations under the Cranston-Gonzales amendment, defendant Carrington failed to take corrective action of recognizing and acknowledging Ms. Cavalier's timely payments to Bank of America for the period of June through October 2012, proof of which was provided to it and clearly shown on the account history attached to Ms. Cavalier's RESPA letter to Carrington.

27. The Cranston-Gonzales amendment to the Real Estate Settlement Procedures Act, 12 U.S.C. §2605(e), provides:

> (e) Duty of loan servicer to respond to borrower inquiries.
>
> (1) Notice of receipt of inquiry
>
> (A) In general
>
> If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>
> (B) Qualified written request
>
> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>> (I) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
>
> (2) Action with respect to inquiry

>Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>(I) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>© after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>(I) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.
>(3) Protection of credit rating
>During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).
>(4) Limited extension of response time
>The 30-day period described in paragraph (2) may be extended for not more than 15 days if, before the end of such 30-day period, the servicer notifies the borrower of the extension and the reasons for the delay in responding.

28.     12 U.S.C. §2605(f) provides:

(f) Damages and costs. Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

>  (1) Individuals. In the case of any action by an individual, an amount equal to the sum of--
>
>  any actual damages to the borrower as a result of the failure; and
>
>  (2) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 2,000....
>
>> (3) Costs. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

29.     Ms. Cavalier was also concerned about how Carrington and Bank of America were reporting this account to consumer reporting agencies.

30.     In addition to sending this dispute letter to defendant Carrington, Ms. Cavalier also mailed a dispute letter regarding the reporting of this account by both Carrington and Bank of America, including her timely payments prior to Carrington's refusal to accept them, to defendant Equifax on May 11, 2016.

31.     Equifax received this dispute letter and it notified Carrington of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

32.     Equifax received this dispute letter and it notified Bank of America of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

33.     Ms. Cavalier also mailed a dispute letter the reporting of this account by both

Carrington and Bank of America, including her timely payments prior to Carrington's refusal to accept them, to defendant Experian on May 11, 2016.

34. Experian received this dispute letter and it notified Carrington of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

35. Experian received this dispute letter and it notified Bank of America of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

36. Ms. Cavalier also mailed a dispute letter the reporting of this account by both Carrington and Bank of America, including her timely payments prior to Carrington's refusal to accept them, to defendant Trans Union on May 11, 2016.

37. Trans Union received this dispute letter and it notified Carrington of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

38. Trans Union received this dispute letter and it notified Bank of America of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

39. In response to Ms. Cavalier's dispute from Equifax, Carrington verified to Equifax that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

40. In response to Ms. Cavalier's dispute from Equifax, Bank of America verified to Equifax that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

41. In response to Ms. Cavalier's dispute from Experian, Carrington verified to Experian that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

42. In response to Ms. Cavalier's dispute from Experian, Bank of America verified to Experian that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

43. In response to Ms. Cavalier's dispute from Trans Union, Carrington verified to Trans Union that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

44. In response to Ms. Cavalier's dispute from Trans Union, Bank of America verified to Trans Union that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

45. Ms. Cavalier later mailed a second dispute letter regarding the reporting of this account by both Carrington and Bank of America, including her timely payments prior to Carrington's refusal to accept them, to defendant Equifax on June 27, 2016.

46. Equifax received this dispute letter and it notified Carrington of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

47. Equifax received this dispute letter and it notified Bank of America of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

48. Ms. Cavalier also mailed a second dispute letter the reporting of this account by both Carrington and Bank of America, including her timely payments prior to Carrington's refusal to accept them, to defendant Experian on June 27, 2016.

49. Experian received this dispute letter and it notified Carrington of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

50. Experian received this dispute letter and it notified Bank of America of

plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

51. Ms. Cavalier also mailed a dispute letter the reporting of this account by both Carrington and Bank of America, including her timely payments prior to Carrington's refusal to accept them, to defendant Trans Union on June 27, 2016.

52. Trans Union received this dispute letter and it notified Carrington of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

53. Trans Union received this dispute letter and it notified Bank of America of plaintiff's dispute pursuant to 15 U.S.C. § 1681i(a).

54. In response to Ms. Cavalier's second dispute from Equifax, Carrington verified to Equifax that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

55. In response to Ms. Cavalier's second dispute from Equifax, Bank of America verified to Equifax that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

56. In response to Ms. Cavalier's second dispute from Experian, Carrington verified to Experian that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

57. In response to Ms. Cavalier's second dispute from Experian, Bank of America verified to Experian that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

58. In response to Ms. Cavalier's second dispute from Trans Union, Carrington verified to Trans Union that Ms. Cavalier was late on her mortgage payments when she was actually

current until Carrington wrongfully refused to accept them anymore.

59. In response to Ms. Cavalier's second dispute from Trans Union, Bank of America verified to Trans Union that Ms. Cavalier was late on her mortgage payments when she was actually current until Carrington wrongfully refused to accept them anymore.

60. After receipt of Carrington's responses to Ms. Cavalier's dispute, defendant Equifax continues to sell consumer reports regarding Ms. Cavalier which contain the wrongful reporting of the Carrington and Bank of America tradelines.

61. After receipt of Carrington's responses to Ms. Cavalier's dispute, defendant Experian continues to sell consumer reports regarding Ms. Cavalier which contain the wrongful reporting of the Carrington and Bank of America tradelines.

62. After receipt of Carrington's responses to Ms. Cavalier's dispute, defendant Trans Union continues to sell consumer reports regarding Ms. Cavalier which contain the wrongful reporting of the Carrington and Bank of America tradelines.

63. On June 27, 2016, plaintiff caused a letter to be sent to Bank of America, at the address it specified for RESPA letters, which included proof of her payments due June through October 2012.

64. The June 27, 2016 letter is a "qualified written request" and "notice of error" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

65. In violation of its obligations under the Cranston-Gonzales amendment, defendant Bank of America failed to take appropriate corrective action.

66. Ms. Cavalier spent time creating and writing both of her RESPA dispute letters and incurred out-of-pocket expenses related to these RESPA dispute letters, including

expenses for preparing, photocopying and obtaining certified mailings of correspondence. She also experienced lost time and inconvenience both in putting the information needed for the RESPA dispute letters and having to educate herself on the RESPA process.

67. Bank of America failed to take corrective action within 30 business days of the receipt of the RESPA dispute letter from Ms. Cavalier. Specifically, (1) Bank of America did not make any necessary corrections to Ms. Cavalier's account for the RESPA dispute letter nor did it provide written notification of the correction in response to the June 27, 2016 dispute letter, (2) upon information and belief, Bank of America did not conduct any investigation in response to the June 27, 2016 dispute letter; and Bank of America did not provide Ms. Cavalier with a written explanation nor clarification as to why Bank of America believes the account is correct in response to the June 27, 2016 dispute letter, nor (3) after conducting an investigation, Bank of America did not provide Ms. Cavalier with the information requested, nor provide an explanation why the information sought is unavailable. *See, e.g.*, 12 U.S.C. § 2605(e)(2).

68. Ms. Cavalier has also suffered emotional distress flowing from Carrington's violation of RESPA. Ms. Cavalier suffers from deep mental anguish that Carrington will persist in not conducting a thorough investigation as is required by 12 U.S.C. § 2605(e)(2) and must presently live with the knowledge that she will continue to have her payments refused by Carrington which has already begun foreclosure proceedings. She also presently lives with the impending dread of a large (and wrongful) payment that would impose a severe hardship on her to pay, and the fear of the resulting wrongful foreclosure that would be instituted if this large payment cannot be made.

69. Ms. Cavalier has also suffered emotional distress flowing from Bank of America's violation of RESPA. Ms. Cavalier suffers from deep mental anguish that Bank of

America will persist in not conducting a thorough investigation as is required by 12 U.S.C. § 2605(e)(2) and must presently live with the knowledge that she faces foreclosure due to Bank of America's failure to account for her timely payments.

### DEFENDANT CARRINGTON'S PRACTICES

70. Carrington's failure to comply with the provisions of RESPA and investigate and correct the concerns raised by Ms. Cavalier have caused her to suffer actual damages in the form of great anxiety, anguish, and worry. It also has caused her actual damages regarding the misapplication of her payments, and incidental time and costs associated with the RESPA dispute letters.

71. Carrington's failure to comply with the provisions of RESPA is part of a pattern and practice of noncompliance and Ms. Cavalier is entitled to additional damages under RESPA.

72. Ms. Cavalier is further entitled to recover, upon successful prosecution of this action, the costs of this action, including reasonable attorney's fees, for Carrington's violations of RESPA.

73. As a result of defendant Carrington's failure to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to her reputation, emotional distress, mental anguish, stress, humiliation, aggravation, for which she seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

### DEFENDANT BANK OF AMERICA'S PRACTICES

74. Bank of America's failure to comply with the provisions of RESPA and


investigate and correct the concerns raised by Ms. Cavalier have caused her to suffer actual damages in the form of great anxiety, anguish, and worry. It also has caused her actual damages regarding the misapplication of her payments, and incidental time and costs associated with the RESPA dispute letters.

75. Bank of America's failure to comply with the provisions of RESPA is part of a pattern and practice of noncompliance and Ms. Cavalier is entitled to additional damages under RESPA.

76. Ms. Cavalier is further entitled to recover, upon successful prosecution of this action, the costs of this action, including reasonable attorney's fees, for Bank of America's violations of RESPA.

77. As a result of defendant Bank of America's failure to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to her reputation, emotional distress, mental anguish, stress, humiliation, aggravation, for which she seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

## DEFENDANT EQUIFAX'S PRACTICES

78. Defendant Equifax negligently and willfully failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Ms. Cavalier, as required by 15 U.S.C. § 1681e(b); and

   b. failing to comply with the reinvestigation requirements in 15 U.S.C.

§ 1681i(a) as to Ms. Cavalier.

79. As a result of defendant Equifax's failures to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to her reputation, emotional distress, mental anguish, stress, humiliation, and aggravation, for which she seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

**DEFENDANT EXPERIAN'S PRACTICES**

80. Defendant Experian negligently and willfully failed to comply with the requirements of FCRA, including but not limited to:

   a. failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Ms. Cavalier, as required by 15 U.S.C. § 1681e(b); and

   b. failing to comply with the reinvestigation requirements in 15 U.S.C. § 1681i(a) as to Ms. Cavalier.

81. As a result of defendant Experian's failures to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to her reputation, emotional distress, mental anguish, stress, humiliation, and aggravation, for which she seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

**DEFENDANT TRANS UNION'S PRACTICES**

82. Defendant Trans Union negligently and willfully failed to comply with the requirements of FCRA, including but not limited to:

    a.  failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports concerning Ms. Cavalier, as required by 15 U.S.C. § 1681e(b); and

    b.  failing to comply with the reinvestigation requirements in 15 U.S.C. § 1681i(a) as to Ms. Cavalier.

  83. As a result of defendant Trans Union's failures to comply with the requirements of the FCRA, plaintiff has suffered actual damages, including damage to her reputation, emotional distress, mental anguish, stress, humiliation, and aggravation, for which she seeks damages in amounts to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

  WHEREFORE, plaintiff respectfully requests that the Court grant the following relief in her favor and against each defendant for:

    a)  Actual damages from Carrington for its violations of the RESPA;

    b)  Additional damages from Carrington of $2000 for its violations of RESPA;

    c)  Attorney's fees and costs from Carrington under the RESPA;

    d)  Actual damages from Carrington for its violations of the FCRA;

    e)  Punitive damages from Carrington for its violations of the FCRA;

    f)  Attorney's fees and costs from Carrington under the FCRA;

    g)  Actual damages from Bank of America for its violations of the RESPA;

    h)  Additional damages from Bank of America of $2000 for its violations

of RESPA;

i) Attorney's fees and costs from Bank of America under the RESPA;

j) Actual damages from Bank of America for its violations of the FCRA;

k) Punitive damages from Bank of America for its violations of the FCRA;

l) Attorney's fees and costs from Bank of America under the FCRA;

m) Actual damages from Equifax for its violations of the FCRA;

n) Punitive damages from Equifax for its violations of the FCRA;

o) Attorney's fees and costs from Equifax under the FCRA;

p) Actual damages from Experian for its violations of the FCRA;

q) Punitive damages from Experian for its violations of the FCRA;

r) Attorney's fees and costs from Experian under the FCRA:

s) Actual damages from Trans Union for its violations of the FCRA;

t) Punitive damages from Trans Union for its violations of the FCRA;

u) Attorney's fees and costs from Trans Union under the FCRA: and

v) Such other and further relief as is appropriate.

A JURY TRIAL IS DEMANDED.

s/Garth J. Ridge
**GARTH J. RIDGE**
Attorney for Plaintiff
Bar Roll Number:  20589
251 Florida Street, Suite 301
Baton Rouge, Louisiana 70801

17

Telephone Number:  (225) 343-0700
Facsimile Number: (225) 343-7700
E-mail: GarthRidge@aol.com